[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This petition was initiated by summons and complaint dated December 22, 1997 and returnable January 20, 1998 seeking a dissolution of marriage, custody, support, alimony, counsel fees, an allocation of debts and an assignment of the Defendant's interest in jointly owned property.
Accompanying the complaint were certain motions, automatic orders and a financial affidavit.
Certain orders were entered by the Court, Solomon, J., on April 27, 1998.
Certain orders were entered by the Court, Hurley, J., on May 4, 1998 approving a Stipulation between the parties.
The Defendant appeared by counsel on August 3, 1998.
An amended complaint was filed November 20, 1998 correcting the place of marriage of the parties.
The parties appeared before the Court on November 20, 1998 with their respective counsel and were heard.
The Court makes the following findings of fact. CT Page 15259
The Plaintiff wife, whose maiden name was Aura Maria Tudosie, and the Defendant husband were married on March 27, 1986 at Hastings on the Hudson, Westchester County, New York.
Both parties have resided continuously in this state twelve months next before the date of the filing of the complaint.
One minor child has been born to the Plaintiff, issue of the parties; to wit, Richard Alexander Serdici born October 25, 1986.
No other minor children have been born to the Plaintiff since the date of the marriage.
The State of Connecticut has not and is not contributing to the financial assistance of the parties.
The Defendant is age 52 and has resided in Connecticut for 13 years.
The Defendant is employed by Northeast Utilities and has been with the company for 17 years.
Defendant compensation is based on an hourly rate, his weekly gross is $1,353.00, no overtime is available.
Defendant works at Unit 3 at Millstone.
Defendant's education extended through two years of college.
Defendant's health is poor, he suffers from diabetes, high blood pressure and depression.
Defendant takes insulin daily.
Defendant acknowledges that he has a gambling problem.
This is the Defendant's third marriage and the Plaintiff's first.
The Plaintiff's mother has resided with the parties for the last nine years.
The Defendant has sought counseling with Dr. Patterson concerning his gambling problems. CT Page 15260
The Defendant helps his son on a daily basis with his homework and the sport of tennis.
Some time ago the parties purchased a home located at 7 Ferro Drive in East Lyme.
The purchase price was $180,000.00. The funds to purchase the property were as follows; $12,000.00 from accumulated back pay of the Defendant, a mortgage of $160,000.00 and the balance from joint savings.
The parties had previously owned property located at 76 Corey Lane which had been purchased for $74,000.00 but sold at a loss.
Some time ago an equity loan was taken out on the 7 Ferro Drive premises to pay off credit card debt, vacation costs and home improvements.
Approximately $50,000.00 was spent on repairs and improvements to the Ferro Drive premises.
The parties jointly own a timeshare interest in Florida, property for which $3,000.00 was paid.
The Defendant has taken cash advances on his credit cards in the last several months.
The Defendant uses an ATM card when he visits the casino incident to gambling.
Recently, the Defendant removed the phones from the residence but returned them one day later.
The Defendant feels and believes that his mother-in-law's presence in the home has been disruptive and has created tensions in the marriage and problems with his son.
There are daily arguments between the parties.
The Defendant began gambling about 18 months ago.
The Defendant recently bought his son a mountain bike for $800.00.
The Plaintiff's mother was operated on for cancer in March CT Page 15261 1998 and the Plaintiff anguished over this event.
On occasion, the Defendant would return from the casino depressed and in bad humor and would verbally abuse the Plaintiff and be profane.
The Plaintiff begged and pleaded with the Defendant to refrain from gambling and to continue counseling to provide insight to his gambling problem to no avail.
The Defendant has been verbally abusive to the Plaintiff's mother. The Plaintiff's health is marginal, she suffers from depression and rheumatoid arthritis of the joints. The Plaintiff is employed at the Norwich Inn and Spa as an aesthetician and has been employed there for the last ten years on a full-time basis.
Plaintiff finds her work tiring.
Plaintiff has been seeing a psychiatrist since July 1998 for depression.
After paying off credit card debt from the home equity loan, there remained $8,000.00, which the Defendant gambled and lost at the casino.
For a considerable time during the marriage, the Plaintiff gave her weekly paycheck to the Defendant.
The Plaintiff prevented the Defendant from securing a further $80,000.00 loan by refusing to sign the necessary documents.
The Plaintiff has no vested pension benefits nor any 401K plan.
The Defendant refused to discuss family finances with the Plaintiff.
The Defendant discontinued prescribed medicine from Dr. Patterson after one month even though its purpose was to assist in the addiction of gambling.
The Defendant has suffered from stresses incident to his employment, the uncertainty of his position and mother-in-law problems. CT Page 15262
The Defendant feels that marital problems contributed to his gambling addiction.
The Defendant has been desirous of preserving the marriage but his gambling has made the prospects of that impossible.
The Defendant has recently conferred with an attorney regarding bankruptcy.
The Plaintiff on occasion accompanied the Defendant to sessions of Gambler's Anonymous but to no avail.
From the financial affidavits of the parties and the testimony adduced, the Court finds:
The Defendant's position as a Senior Designer at Northeast Utilities discloses gross weekly earnings of $1,353.00, deductions of $370.00 and a net of $983.00.
Claimed weekly expenses of $779.00
Credit card debt of $55,000.00 and a 401K loan of $13,000.00. Defendant values the 7 Ferro Drive, East Lyme property at $240,000.00 with encumbrances of $215,000.00.
Defendant discloses a 1991 Nissan Pathfinder motor vehicle valued at $10,000.00 free and clear and a 1989 BMW valued at $9,000.00 with a loan balance of $8,000.00.
The timeshare unit is valued at $3,000.00.
The Webster Bank savings account shown on his affidavit as $18,000.00 joint is actually in the Plaintiff's name alone to preserve the same.
Defendant's financial affidavit reflects U.S. Savings Bonds valued at $12,000.00.
These bonds are in the joint names of the Defendant and the minor child.
There are 118 bonds in all, each of $100.00 denomination.
The Plaintiff's financial affidavit reflects the following: CT Page 15263
Weekly gross from Norwich Inn $832.29, deductions of $198.66 for a net of $633.63.
Weekly expenses of $786.00.
Plaintiff values the 7 Ferro Drive premises at $228,000.00 with encumbrances of $214,000.00.
Plaintiff values the Florida timeshare at $4,000.00.
Plaintiff affidavit reflects the Webster Bank account of $18,000.00.
To Plaintiff's affidavit is attached a detailed statement of credit card debt which totals $56,918.50.
Some of the credit card debt is in joint names amounting to $11,055.90, some in the Defendant's name alone, $28,966.35 and $16,986.20 in the Plaintiff's name.
In some instances the Defendant opened accounts in Plaintiff's name and secured cash advances and withdrawals.
See Defendant's Exhibit 1, statement from Mohegan Sun, for an account of the dates, hours spent at the casino and wins and losses for 1998 through November 19, 1998, amounting to losses of $51,747.00.
The Defendant has a vested interest in Northeast Utilities Service Company Retirement Plan. At age 65 his monthly benefit would be $952.59. Defendant is also a member of the NUSCO 401K plan with a balance of $36,121.92.
Plaintiff's total earnings in 1997 were $30,606.96 as shown in her W-2, in 1996 they were $35,355.50 and in 1996 Defendant's earnings were $73,233.34, in 1995 Plaintiff's earnings were $34,829.18 and the Defendant's $58,035.93.
According to the Mohegan Sun statement of February 6, 1998, the Defendant lost $40,124.00 at the casino in 1997. In 1998 to date of October 16, 1998, he lost $42,704.
 The law
The Court has considered all of the statutes which apply in CT Page 15264 matters of this nature which include without limitation C.G.S. § 46b-56 et seq., regarding custody and visitation, C.G.S. § 46b-62 regarding attorney's fees, C.G.S. § 46b-81
regarding property distribution, C.G.S. § 46b-82 regarding alimony, C.G.S. § 46b-84 regarding child support. The Court has considered all of the applicable case law that govern the matter.
The Court has considered the testimony of the parties and all exhibits and the arguments of counsel.
 Discussion
This is a marriage of 12-1/2 years.
The Plaintiff, in addition to her domestic responsibilities, has been employed outside the home and has made a substantial contribution to the family's finances.
The Defendant has held a responsible position with Northeast Utilities but has succumbed to the addiction of gambling which has had a detrimental effect on the family.
Admittedly, the presence of the Plaintiff's mother in the home for nine years may have contributed to domestic stress but there is no evidence of her being overtly disruptive and according to the Plaintiff, her presence has been helpful and supportive.
The Plaintiff feels that the Defendant's compulsive gambling has made him a spouse she no longer knows or recognizes.
The Court is satisfied that both of the parties have an abiding love and affection for their 12 year old son and that both enjoy a reasonable relationship with the child.
The overly protective attitude of the minor child by the Plaintiff and her mother are well intentioned but should be tempered, mindful of the child's age and the need for a warm bonding with the Defendant.
The Court enters the following orders.
Custody of the minor child Richard Alexander Serdici shall be joint, with the Plaintiff wife being the primary custodial CT Page 15265 parent.
Reasonable and liberal rights of visitation to the Defendant.
Support for the minor child in the amount of $192.00 weekly in accordance with the guideline worksheet. In the event that the Defendant is current in his payments of support then he shall be entitled to take the child as an exemption for income tax purposes.
The 118 U.S. Savings Bonds shall be held in trust with the Plaintiff and Defendant as co-trustees for the benefit of the minor child and his education.
The Defendant shall maintain medical and dental health insurance coverage for the minor child as available through his employment. Any uncovered medical or dental expenses shall be equally apportioned between the Plaintiff and Defendant.
The Defendant shall make the minor child the beneficiary of his present life insurance policy or policies irrevocably and shall keep and maintain them in full force and effect and provide the Plaintiff with annual verification thereof.
The Defendant shall set over and convey all of his right, title and interest in and to the real estate known as 7 Ferro Drive, East Lyme to the Plaintiff, which premises are valued at $228,000.00.
The Plaintiff shall assume and agree to pay the existing first mortgage on the premises now held by AccuBanc Mortgage Corp. and to indemnify and hold the Defendant harmless thereon, said mortgage being in the present approximate amount of $170,884.61 as of July 1998.
The Defendant shall be solely responsible for and pay the Premier Equity second mortgage in the approximate amount of $44,600.00, mindful that said loan was taken out to pay credit card debt caused by gambling.
The Plaintiff shall set over and convey to the Defendant all of her right, title and interest in and to the Florida timeshare unit.
The Plaintiff may retain and keep the $18,000.00 account CT Page 15266 presently held at Webster Bank.
The Plaintiff may retain the two nominal checking and savings accounts at Dutch Point Credit Union.
The Plaintiff may retain the furnishings and contents of the marital home at 7 Ferro Drive, however, the Defendant shall have his personal effects, papers, tools, clothing and items of like nature.
The Plaintiff may retain the 1991 Nissan Pathfinder motor vehicle and the Defendant may retain the 1989 BMW.
The Plaintiff shall be entitled to one-half of the Defendant's NUSCO 401K plan to wit one half of $36,594.00.
The Plaintiff shall be entitled to a 50% interest in and to the Defendant's Northeast Utilities Service Company Retirement Plan, the same to be achieved by a Qualified Domestic Relations Order.
The Defendant shall assist and or participate in securing health insurance coverage for the Plaintiff incident to his employment under Cobra for a period of three years but at the Plaintiff's cost and expense.
The Plaintiff shall be responsible for the debt to People's Bank in the amount of $276.03 and the Sears debt of $1,327.22.
The Defendant shall be responsible for all remaining debts including the debt to GE Capital Consumer American Express Centurion, the Optima Card, MBNA American Platinum and MBNA America inasmuch as the Defendant established the foregoing in Plaintiff's name, took cash advances and signed her name thereto.
The Plaintiff is awarded alimony in the amount of $125.00 weekly for a period of eight years. In the event that he is medically eligible, the Defendant shall maintain a separate policy of life insurance with the Plaintiff as the named beneficiary in the amount of $25,000.00 during the term of the alimony.
The alimony is non-modifiable as to term.
Alimony will terminate in less than eight years in the event CT Page 15267 of the Plaintiff's death, remarriage or cohabitation with a non-related male over age 18.
Each party shall be responsible for their own attorney's fees.
The marriage is dissolved on the grounds of irretrievable breakdown and the parties are declared single and unmarried (C.G.S. § 46b-40c).
Austin, J.